UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM MAHAR,

                          Plaintiff,

v.                                                                                     1:17-CV-0201
                                                                                       (GTS/CFH)
WARREN COUNTY BOARD OF SUPERVISORS
c/o Ronald Conover, Chairman; and WARREN
COUNTY,

                        Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

WILLIAM MAHAR
  Plaintiff, *Pro Se*
222 Rollies Road
Warrensburg, New York 12885

HON. MARY ELIZABETH KISSANE            MARY ELIZABETH KISSANE, ESQ.
Acting County Attorney for Warren County     BRIAN REICHENBACH, ESQ.
  Counsel for Defendants
1340 State Route 9
Lake George, New York 12845

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this constitutional claim filed by William Mahar

("Plaintiff") against the Warren County Board of Supervisors c/o Chairman Ronald Conover and

Warren County ("Defendants"), is Defendants' motion for summary judgment. (Dkt. No. 32.)

For the reasons set forth below, Defendants' motion for summary judgment is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff claims that Warren County's method for electing its Board of Supervisors violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.  (Dkt. No. 24 [Pl.'s Compl.].)  More specifically, Plaintiff claims that voters in the city of Glens Falls and the town of Queensbury are given a greater opportunity to participate in the electoral and political process related to electing the Warren County Board of Supervisors than are voters in other towns and villages in Warren County (including Warrensburg, where Plaintiff resides).  (*Id.*)  In support of this claim, Plaintiff alleges that this inequality results from Warren County's Local Law No. 12 of 2011 (and all its predecessors back to Local Law No. 2 of 1966), which allows voters in Glens Falls and Queensbury to vote "directly and separately" for their Town Supervisor and County Supervisors, while the other towns and villages in Warren County must vote for a single candidate to act in the dual role of Town Supervisor and County Supervisor.  (*Id.*)  Plaintiff alleges that the difference in the voting rights between Glens Falls/Queensbury and the rest of the County creates two different classes of voters in violation of the Fourteenth Amendment.  (*Id.*)

### B.      Undisputed Material Facts on Defendants' Motion for Summary Judgment

As an initial matter, the Court notes that Plaintiff makes a number of denials, or partial denials, by asserting that the stated facts are not material.  (Dkt. No. 34, Attach. 1, at ¶¶ 1-3, 5, 7, 11, 13, 16, 18, 22, 24-25 [Pl.'s Rule 7.1 Resp.].)  However, an assertion that a fact is not material is not sufficient to effect a proper denial of an asserted fact under the District's Local Rules of Practice.  *See Zhao-Royo v. New York State Educ. Dep't*, 14-CV-0935, 2017 WL 149981, at *2, n.2 (N.D.N.Y. Jan. 13, 2017) (Suddaby, C.J.) ("The materiality of an assertion of fact on a

motion for summary judgment is a legal conclusion to be made by the Court. . . . [a]s a result, where a non-movant has merely objected to the materiality of a fact, and the Court has concluded that the fact is material, the fact will be deemed admitted.") (collecting cases). Plaintiff admits that the denied facts are material to the doctrine of res judicata, and the Court finds that the doctrine of res judicata is material in this case. (Dkt. No. 34, Attach. 1, at ¶¶ 1-3, 5, 7, 11-12 [Pl.'s Rule 7.1 Resp.].) Additionally, Plaintiff does not cite evidence to support these denials; the facts in question therefore are deemed admitted on this alternative basis. *See Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiff's S.D.N.Y. Local Rule 56.1 statement but declined to provide record citations in support); *N.Y. Teamsters v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations").

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 32, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 34, Attach. 1 [Pl.'s Rule 7.1 Resp.].)

1.      Plaintiff commenced a previous action in the Northern District of New York on September 7, 2016, captioned *Mark Westcott, G. Travis Whitehead, Doug Irish, William Mahar, Ava Ashendorf, Robert Schulz v. Warren County Board of Supervisors C/O Kevin Geraghty, Chairman* ("Case No. 1:16-CV-1088").

2.      Case No. 1:16-CV-1088 was brought by six plaintiffs including Plaintiff.

3.      The plaintiffs' complaint in Case No. 1:16-CV-1088 claimed, inter alia, that Warren County's form of government violated the Equal Protection Clause of the Fourteenth Amendment.

4.      In Case No. 1:16-CV-1088, the plaintiffs challenged the voting structure of the Warren County Board of Supervisors established by Local Law No. 2 of 1966.

5.      In Case No. 1:16-CV-1088, the plaintiffs argued that Warren County's apportionment and weighted voting system violated the Fourteenth Amendment because "the mix of single districts (five of which are wards within the municipality of Glens Falls and have significantly different populations) and one multi-number district (the town of Queensbury) is arbitrary and discriminatory (given the fact that, inter alia, fewer representatives seldom vote as a bloc while [a] single-member town by definition votes as a bloc)."

6.      Local Law No. 2 of 1966 is revised every ten years based upon the decennial census.

7.      In Case No. 1:16-CV-1088, Plaintiff filed an individual reply/opposition memorandum of law in support of his motion for summary judgment and in opposition to the defendants' cross-motion for summary judgment.

8.      Plaintiff filed his Complaint in the current action on February 22, 2017, while Case No. 1:16-CV-1088 was still pending.

9.      Plaintiff filed an Amended Complaint in this action on June 7, 2017.

10.    Plaintiff's Amended Complaint in the current action asks the Court to declare Warren County's system of electing its Board of Supervisors as set forth in Local Law No. 2 of 1966, as well as its most current version, Local Law No. 12 of 2011, unconstitutional under the Equal Protection Clause of the Fourteenth Amendment.[1]

11.    On April 27, 2017, this Court issued a Decision and Order in Case No. 1:16-CV-1088 denying the plaintiffs' motion for summary judgment and granting the defendant's cross-motion for summary judgment.

12.    The Court's Decision and Order of April 27, 2017, granted the defendant's cross-motion for summary judgment "for each of the reasons stated in Defendant's opposition memorandum of law and sur-reply/reply memorandum of law."

13.    The Court's Decision and Order of April 27, 2017, held that Warren County's statutorily created system of legislative apportionment and weighted voting

---

[1]    Plaintiff denies the implication that, in this action, he is reasserting the challenge asserted in Case No. 1:16-CV-1088, arguing that, in this action, he is merely challenging Warren County's *system* of electing its Board of Supervisors.  (Dkt. No. 34, Attach. 1, at ¶ 10 [Pl.'s Rule 7.1 Resp.].)  However, a Rule 7.1 Response is not the means by which to dispute a possibly implied fact but the means by which to dispute an expressly asserted fact.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's responses shall . . . admit[] and/or deny[] each of the movant's *assertions* in matching numbered paragraphs.") (emphasis added); *see, e.g.*, *Yetman v. Capital Dist. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

survived Plaintiff's equal protection challenge.[2]

14.     Local Law No. 2 of 1966 established, inter alia, the weighted voting structure and the composition of the Board of Supervisors.

15.     Every ten years, after the decennial census results are released, the County Board passes a new local law to reapportion the votes on the County Board to match the most-recent decennial census population.

16.     According to the 2010 U.S. Census, the total population of Warren County in 2010 was 65,707, and the 2010 population of the individual towns in Warren County was as follows: Bolton 2,326; Chester 3,355; Glens Falls 14,700; Hague 699; Horicon 1,389; Johnsburg 2,395; Lake George 3,515; Lake Luzerne 3, 347; Queensbury 27,901; Stony Creek 767; Thurman 1,219; and Warrensburg 4,094.[3]

17.     Local Law No. 12 of 2011 reapportioned the weighted voting of the members of the Warren County Board of Supervisors in accordance with the 2010 federal

_____

[2]     To the extent that Plaintiff denied that the Court's Decision and Order of April 27, 2017, opined on the constitutionality of at least some portion of Section 3 of Local Law 2 of 1966 or Section 3 of Local Law 12 of 2011, Plaintiff has failed to cite any admissible record evidence in support of that denial. (Dkt. No. 34, Attach. 1, at ¶ 13 [Pl.'s Rule 7.1 Resp.].)

[3]     Plaintiff denies this asserted fact for three reasons: Defendants' failure to establish the admissibility of the documents, the alleged staleness of the information, and a lack of materiality. (Dkt. No. 34, Attach. 1, at ¶ 16 [Pl.'s Rule 7.1 Resp.].) Plaintiff's arguments are without merit. Defendants' source for this fact is the results of the 2010 U.S. Census, which is the most-current census data available and that on which the apportionment in Local Rule No. 12 of 2011 is based. This census data was adduced by a member of the County Attorney's Office, who presumably has personal knowledge of the data reported by the County to the U.S. Census Bureau. In any event, Plaintiff has not show that this material "cannot be presented in any form that would be admissible in evidence," pursuant to Fed. R. Civ. P. 56(c)(2). Finally, the Court notes that this same census data was accepted as an undisputed material fact in Case No. 1:16-CV-0188. (Dkt. No. 32, Attach. 5, at ¶ 6 [Decision and Order, 4/27/2017].) This fact is therefore deemed admitted.

census.[4]

18.    Local Law No. 12 of 2011 provides that Queensbury is represented by one Town Supervisor and four separately elected "at large" County Supervisors.

19.    Each supervisor from the town of Queensbury carries 85 votes of the total County Board voting strength of 1,000, which results in the town's delegation to the County Board of Supervisors holding 425 votes of the 1,000, which is 42.5%.[5]

20.    The percentage of the population of Warren County that resides in the town of Queensbury is 42.46%.[6]

21.    This Court's Decision and Order of April 27, 2017, specifically found that the defendants' implementation of Local Law No. 12 of 2011 meets constitutional standards for quantitative representation.

22.    The Court's Decision and Order of April 27, 2017, addressed the number of supervisors from the town of Queensbury, held the number constitutional, and held that the number could even be increased if the population distribution in the next decennial census warranted it.

---

[4]    Plaintiff denies this asserted fact as immaterial.  (Dkt. No. 34, Attach. 1, at ¶ 20 [Pl.'s Rule 7.1 Resp.].)  However, the Court finds this asserted fact is material.  Moreover, the evidence cited by Defendants explicitly states that the changes to the County Board were "in accordance with" or "based on the 2010 Federal Census."  (Dkt. No. 32, Attach. 8, at 2 [Local Law No. 12 of 2011].)  This fact is therefore deemed admitted.

[5]    Plaintiff denies this asserted fact, arguing that it is not material and that the accuracy of Defendants' calculations cannot be readily determined.  (Dkt. No. 34, Attach. 1, at ¶ 22 [Pl.'s Rule 7.1 Resp.].)  However, the evidence cited by Defendants clearly substantiates the number of votes for both the Queensbury supervisors and the County Board as a whole; Defendants' calculations from this data are thus easily verified.  This fact is therefore deemed admitted.

[6]    Plaintiff denies this asserted fact, arguing that the accuracy of Defendants' calculations cannot be readily determined.  (Dkt. No. 34, Attach. 1, at ¶ 23 [Pl.'s Rule 7.1 Resp.].)  However, using the population of the town of Queenbury and the total population of Warren County contained in the 2010 census data cited by Defendants, the accuracy of Defendants' calculations is easily verifiable.  This fact is therefore deemed admitted.

C.    **Parties' Briefing on the Pending Motion**

1.    **Defendants' Motion for Summary Judgment**

a.    **Defendants' Memorandum of Law**

In their motion for summary judgment, Defendants assert three arguments. (Dkt. No. 32, Attach. 2, at 7-12 [Defs.' Mem. of Law].) First, Defendants argue that Plaintiff's Amended Complaint "fails to state a valid cause of action" based on the exhibits adduced by Defendants in their motion papers. (*Id.* at 7-9.) Specifically, Defendants argue that the proportional system used for the County Board is based on the population of the various cities and towns, with the number of supervisors and the total percentage of voting power for each city or town being proportionate to the city or town's population. (*Id.* at 7-8.) Defendants argue that, regardless of the number of supervisors each area has, the voting strength reflects the population and is therefore consistent with the "one person, one vote principle." (*Id.* at 7-9.)

Second, Defendants argue that Plaintiff's Amended Complaint is barred by the doctrine of res judicata as a result of Case No. 1:16-CV-1088. (*Id.* at 9-12.) Specifically, Defendants argue that (a) the grant of summary judgment in that case constitutes a final decision on the merits, (b) this Court (which issued the Decision and Order in Case No. 1:16-CV-1088) is a court of competent jurisdiction, (c) although there were other plaintiffs in Case No. 1:16-CV-1088, Plaintiff had a full opportunity to make his own arguments in that case (and even filed his own separate reply/opposition memorandum) and the Board of Supervisors are Defendants in both suits, and (d) the two suits involve the same cause of action. (*Id.* at 10-11.)

Third, Defendants argue that Warren County's government satisfies constitutional requirements for the same reasons they argued (and the Court accepted) in Case No. 1:16-CV-1088. (*Id.* at 12.)

**b.**     **Plaintiff's Opposition Memorandum of Law**

Generally, in opposition to Defendants' motion, Plaintiff asserts three arguments.  (Dkt.

No. 34, Attach. 2, at 7-15 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that Defendants'

argument that he has failed to state a claim is insufficient to merit summary judgment.  (*Id.* at 7-

9.)  Specifically, Plaintiff argues that (a) Defendants "misstate, misquote, and misrepresent" his

claims and pleadings, and (b) rely on facts not in evidence related to the electoral processes and

political structures of Glens Falls and Lake George.  (*Id.* at 7-8.)  Plaintiff also argues that

Defendants' argument is in essence a Fed. R. Civ. P. "12(b)(6)" defense challenging the facial

sufficiency of the Amended Complaint that is untimely at the motion for summary judgment

stage.  (*Id.* at 8-9.)  Plaintiff additionally requests that, should the Court consider Defendants'

argument, he be permitted leave to amend the Amended Complaint.  (*Id* at 8.)

Second, Plaintiff argues that the doctrine of res judicata does not apply to the current

lawsuit.  (*Id.* at 9-14.)  Specifically, Plaintiff argues that the issues litigated in Case No. 1:16-

CV-1088 are not the same issues in this case.  (*Id.* at 9-12.)  Plaintiff argues that Case No. 1:16-

CV-1088 involved a decision on the implementation of a system of weighted voting when the

Board of Supervisors votes on issues, unweighted committees as part of that implementation, and

the intermingling of single member and multi-member districts, whereas this case seeks a

determination as to whether the process for electing the candidates to serve on the Board of

Supervisors is constitutional.  (*Id.*)  Plaintiff argues that the temporal proximity between the

claims is different because the claim in Case No. 1:16-CV-1088 related to actions after election

day, while the claim in this case is related to actions before and on election day.  (*Id.*)  Plaintiff

argues that the evidence and facts central to the current case (the voting ballots for the different

cities and towns) are different than those central to Case No. 1:16-CV-1088 (where evidence of census data and government apportionment was crucial).  (*Id.* at 11.)  Plaintiff also argues that the issue of the constitutionality of the voting process itself could not have been raised in Case No. 1:16-CV-1088 because the difference in the rights at issue and relevant evidence would have made it an "inconvenient trial unit" for a single case.  (*Id.* at 12-13.)  Finally, Plaintiff argues that, because some of the plaintiffs in Case No. 1:16-CV-1088 were residents of Glens Falls and Queenbury (the alleged comparators in this case), those plaintiffs would not have had standing to bring the current claim in that previous case.  (*Id.* at 13-14.)

Third, Plaintiff argues that Defendants' third argument is unpersuasive because it is based on the applicability of the doctrine of res judicata, and because Defendants improperly incorporated by reference their previous memorandum of law in violation of the page limit set forth in Local Rule 7.1(a)(1).  (*Id.* at 14-15.)

### c.    Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendants assert four arguments.  (Dkt. No. 35, at 4-9 [Defs.' Reply Mem. of Law].)  First, in response to Plaintiff's objections to Defendants' citation of facts in their memorandum of law and their reliance on facts unsupported by record citations, Defendants argue that citing facts in a memorandum does not violate the Local Rule's requirement for a separate, numbered Statement of Material Facts (which Defendants note they also submitted with their memorandum), and that their facts are supported by record citations (and that many of them were already established in this Court's previous decision in Case No. 1:16-CV-1088).  (*Id.* at 4-6.)

Second, in response to Plaintiff's second argument, Defendants argue that Plaintiff nonsensically claims that he is treated unequally because his town elects only one person to serve as both Town Supervisor and County Supervisor, while Glens Falls and Queensbury elect separate Town Supervisors and County Supervisors. (*Id.* at 6.) Defendants argue that there is no logical way for voters to vote for separate Town Supervisors and County Supervisors where the duties for both of those positions reside in a single individual. (*Id.* at 7.)

Third, Defendants argue that, for the purposes of the doctrine of res judicata, Plaintiff's cut-off date of election day is arbitrary and meaningless because a court "would not pass on the constitutional permissibility of . . . a county legislative body created by state statute if the very process of allowing election of people to occupy the offices were unconstitutional under the same amendment to the constitution, the [F]ourteenth, without addressing such an infirmity." (*Id.* at 8.) Defendants argue that, to the extent the election process was therefore contemplated by this Court in Case No. 1:16-CV-1088, the issue here was previously litigated. (*Id.* at 8-9.)

Fourth, Defendants argue that the County Board's form of government is constitutional and that incorporation by reference of their previous memorandum was allowed based on the Court's statement in Case No. 1:16-CV-1088 that, in its Decision and Order of April 27, 2017, it adopted the analysis set forth in Defendants' memoranda in that case. (*Id.* at 9.)

###### d.     **Plaintiff's Sur-Reply Memorandum of Law**

Generally, in sur-reply to Defendants' reply memorandum of law, Plaintiff asserts four arguments. (Dkt. No. 39, at 3-5 [Pl.'s Sur-Reply Mem. of Law].) First, Plaintiff argues that Defendants' newly raised affirmative defense of compliance with the statute was long ago waived and cannot be raised now. (*Id.* at 3-4.)

11

Second, Plaintiff argues that his opposition memorandum of law did not amend the Amended Complaint in any way, but merely reworded the allegations in the Amended Complaint.  (*Id.* at 4.)

Third, Plaintiff argues that Defendants' argument that "any possible resolution" would be a "logical impossibility" is unpersuasive because the resolution here would impact elected offices (which can be bifurcated), not individual people (which cannot).  (*Id.*)

Fourth, Plaintiff argues that the Court should reject Defendants' logic that the Court previously considered the constitutionality of the election process itself by virtue of considering the constitutionality of the products of the election (i.e., the composition of the County Board), despite being silent on that issue in its Decision and Order and not providing notice to the parties that it was addressing an issue that was not before the Court.  (*Id.* at 4-5.)

## II.    GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[7]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

---

[7]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[8]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[9] Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

---

[8]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[9]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[10]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[11]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[10]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[11]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

### III.    ANALYSIS

#### A.    Whether Plaintiff's Claim Is Barred By the Doctrine of Res Judicata

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 32, Attach. 2, at 9-12 [Defs.'

Mem. of Law]; Dkt. No. 35, at 7-9 [Defs.' Reply Mem. of Law].)  To these reasons, the Court

adds the following analysis.

"Res judicata bars re-litigation if '(1) the previous action involved an adjudication on the

merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3)

the claims asserted in the subsequent action were, or could have been, raised in the prior

action.'" *Soules v. Connecticut Dept. of Emergency Servs. and Pub. Prot.*, 882 F.3d 52, 55 (2d

Cir. 2018) (quoting *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 285 [2d Cir. 2000]);

*Lachaab v. State Univ. of New York (SUNY) Bd. of Tr.*, 16-CV-1019, 2017 WL 4350565, at *2

(N.D.N.Y. Aug. 4, 2017) (Mordue, J.).  With regard to the second element, "'res judicata may . .

. be asserted by a party that is in privity with a party to an earlier action' where 'the interests of

the defendant were adequately represented in the earlier action.'"  *Randall v. Amica Mutual Ins.

Co.*, 17-CV-0013, 2017 WL 6408937, at *5 (N.D.N.Y. Sept. 22, 2017) (Sannes, J.) (quoting

*Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 [S.D.N.Y. 2008]).  With regard to the third

element, when determining whether the claims were or could have been raised in the prior

action, a court must consider whether the current lawsuit concerns "'the same claim–or nucleus

of operative facts–as the first suit,' applying three considerations: '(1) whether the underlying

facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a

convenient trial unit; and (3) whether their treatment as a unit conforms to the parties'

expectations.'"  *Soules*, 882 F.3d at 55 (quoting *Channer v. Dept. of Homeland Sec.*, 527 F.3d

275, 280 [2d Cir. 2008]); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d

Cir. 2014) ("Whether a claim that was not raised in the previous action could have been raised

therein 'depends in part on whether the same transaction or connected series of transactions is at

issue, whether the same evidence is needed to support both claims, and whether the facts

essential to the second were present in the first.'").  "Where all requirements are met, res judicata

can act as a bar to virtually any sort of claim."  *Monahan*, 214 F.3d at 290.

As to the first element, it is clear that Case No. 1:16-CV-1088 involved a adjudication on

the merits.  *See Smith v. City of New York*, 130 F. Supp. 3d 819, 828 (S.D.N.Y. 2015) ("Clearly,

summary judgment is an adjudication on the merits for res judicata purposes.").

As to the second element, Plaintiff was one of the plaintiffs in Case No. 1:16-CV-1088,

which was brought against the Warren County Board of Supervisors c/o the chairman of the

Board, Kevin Geraghty.  (Dkt. No. 32, Attach. 5, at 2 [Decision and Order, 4/27/2017].)

Although the chairman in the current case (Ronald Conover) is different, this difference has no

impact on the res judicata analysis because the true Defendant is the Warren County Board of

Supervisors and any interests of the current chairman and the Warren County Board of

Supervisors would have been adequately protected in Case No. 1:16-CV-1088 by the Board, care

of the previous chairman.  *Randall*, 17-CV-0013, 2017 WL 6408937, at *5.  To the extent that

Plaintiff can sue (and is suing) Warren County as an entity separate from the Warren County

Board of Supervisors, the Court finds that the Board of Supervisors also would have adequately

represented the interests of the County itself in the previous litigation.  Additionally, the fact that

the other plaintiffs from Case No. 1:16-CV-1088 are absent from this litigation does not preclude

application of res judicata.  The important fact is that Plaintiff himself was a party in Case No.

1:16-CV-1088 and thus had a full chance to represent his interests in that action.  As Defendant

argues, Plaintiff submitted his own separate reply/opposition memorandum of law in that

litigation, something which suggests he had opportunity to make the arguments and objections

he wished to make in pursuit of that claim.  (Dkt. No. 32, Attach. 10.)  In addition, Plaintiff

signed the plaintiffs' memorandum-of-law-in-chief in support of their motion for summary

judgment in that action.  The Court therefore finds that the two actions contain the same parties

for the purpose of res judicata.

As to the third element, Plaintiff argues that (a) the claim involved in this action is not the

same as that raised in Case No. 1:16-CV-1088, (b) the claim could not have been raised in the

previous litigation because some of the plaintiffs in Case No. 1:16-CV-1088 would have lacked

standing to pursue such a claim, (c) the claim could not have been raised in the previous

litigation because the current claim is based on different facts and subject to a different level of

scrutiny, and therefore does not constitute a "convenient trial unit" with the previous claim, and

(d) treating the claims as a single trial unit would not conform to expectations.  (Dkt. No. 34,

Attach. 2, at 9-14 [Pl.'s Opp'n Mem. of Law].)

As an initial matter, the Court agrees with Plaintiff that the claim alleged in this litigation

is not precisely the same as that alleged or decided in Case No. 1:16-CV-1088.  In Case No.

1:16-CV-1088, plaintiffs alleged that the apportionment legislation under which Board

Supervisors exercise their voting power was arbitrary and discriminatory based on the weighting

of the Supervisors' votes; the plaintiffs in essence challenged the constitutionality of the way

districts were made up for the purposes of determining the number of supervisors and the weight

of their votes.  (Dkt. No. 32, Attach. 5, at 3 [Decision and Order, 4/27/2017].)  As Plaintiff notes, the claim in that case related to the constitutionality of how the Board of Supervisors voted.  By contrast, Plaintiff's claim in the current litigation focuses on the alleged unconstitutionality of the system for electing those Supervisors.  The actual process of electing the Board of Supervisors is a different issue than how the Supervisors themselves later vote.  To that extent, the claim asserted here is different from the claim asserted in Case No. 1:16-CV-1088.

However, this conclusion is not the end of the res judicata inquiry.  As noted above, res judicata may still bar Plaintiff's claim if it *could have been* raised in the previous litigation, whether or not it was in fact raised.  None of Plaintiff's arguments as to why this claim could not have been brought in Case No. 1:16-CV-1088 are persuasive.

First, Plaintiff's argument that he could not have brought this claim in Case No. 1:16-CV-1088 due to the fact that some of the plaintiffs in that action would not have had standing as to that claim is directly contradicted by this Court's findings in Case No. 1:16-CV-1088.  Particularly, the Court found that it was not necessary to decide the issue of whether some of the plaintiffs lacked standing as to some of the claims because at least one plaintiff (Plaintiff, in fact) had standing, "and the lack of standing of the other plaintiffs is irrelevant where, as here, the plaintiff with standing does not seek monetary relief but seeks only declaratory relief."  (Dkt. No. 32, Attach. 5, at 24 [Decision and Order, 4/27/2017].)  Plaintiff's Amended Complaint in this action lists only declaratory relief in its prayer for relief; therefore, whether the other plaintiffs would have lacked standing to assert the current claim would not have prevented Plaintiff from asserting it in Case No. 1:16-CV-1088 because Plaintiff had (and has) standing to bring that claim.

18

Second, contrary to Plaintiff's argument, the two claims arise from a connected series of transactions and form a convenient trial unit. Specifically, the determination of whether a city or town votes for a dual Town Supervisor/Board Supervisor or whether they vote for separate Town and Board Supervisors is determined by the population of the town or city; the population of the town or city was also the basis for the Board of Supervisors apportionment system at issue in Case No. 1:16-CV-1088. Plaintiff nonetheless argues that these population figures are not relevant to the current claim; rather, what is relevant, he argues, are the ballots of the various towns and cities showing that some towns and cities are treated differently in the voting process. (Dkt. No. 34, Attach. 2, at 11 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff's argument ignores the fact that those differences in the voting ballots were a direct result of using the population data from the 2010 census. Therefore, the same nucleus of operative facts applies to both claims, and the voting data was presented in Case No. 1:16-CV-1088. Plaintiff's additional argument that the two claims do not constitute a convenient trial unit because they might be subject to different constitutional standards of review is also unavailing. (Dkt. No. 34, Attach. 2, at 13 [Pl.'s Opp'n Mem. of Law].) Even if Plaintiff were correct that strict scrutiny would apply to his current claim because it implicates the right to vote, there is nothing that would prevent a court from hearing claims subject to differing levels of scrutiny in the same case if they are otherwise based on the same nucleus of operative facts.

Third, Plaintiff does not allege that this unconstitutional voting process did not exist at the time of Case No. 1:16-CV-1088; any such allegation would be without support because the first Local Law outlining the voting process for the Board of Supervisors was enacted in 1966, the most recent Local Law outlining such process was enacted in 2011, and, as both parties

agree, that Local Law is changed only every ten years to reflect changes in census data.

Plaintiff's argument that treatment of these claims as a unit would not conform to the parties'

expectations is therefore without merit, given that they rely on similar facts (particularly census

data), they are related to Local Law No. 12 of 2011 and Local Law No. 2 of 1966, and Plaintiff

would have very likely been aware that the challenged voting process existed at least by the time

Case No. 1:16-CV-1088 was brought.  The fact that Plaintiff, proceeding *pro se*,[12] might not

have understood the intricacies of res judicata when proceeding with Case No. 1:16-CV-1088

does not prevent that doctrine from applying to his claim given the evidence.

Based on the above, the Court finds that res judicata applies to Plaintiff's claim in this

action.  However, the Court notes that, even were it to find that res judicata was inapplicable, it

would still grant Defendants' motion for summary judgment for the reasons that follow.

**B.    Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Equal Protection Claim**

After carefully considering the matter, the Court answers this question in the affirmative

for the following reasons.

The Court begins by noting that it is not entirely clear whether the documents cited in

support of Defendants' first argument are intended to serve as record evidence for the purposes

of a Fed. R. Civ. P. 56 analysis or matters outside the four-corners of a complaint that may be

considered for purposes of a Fed. R. Civ. P. 12(b)(6) or 12(c) analysis (e.g., as matters

incorporated by reference in the complaint, matters integral to the complaint, or matters of which

judicial notice may be taken).  (Dkt. No. 32, Attach. 2, at 7-9 [Defs.' Mem. of Law].)  While it is

---

[12]    The Court continues to extend special solicitude to Plaintiff as a *pro se* civil rights plaintiff although it frankly strains credulity to believe he is proceeding without the help of counsel in researching and drafting his papers.

certainly permissible for a defendant to include a failure-to-state-a-claim argument in its motion

for summary judgment (i.e., to the extent that the motion for summary judgment is based

exclusively on the factual allegations of the plaintiff's complaint),[13] here the Court construes the

documents in question as supporting an argument that Plaintiff has failed to *establish* a claim for

the purposes of Fed. R. Civ. P. 56 (despite Defendants' use of the words "fail[ure] to state a

claim").

    The Court notes also that, while the Court agrees with Plaintiff's argument that it is

impermissible to incorporate legal arguments from a prior memorandum of law into a current

memorandum of law (an argument that further supports the Court's suspicion that Plaintiff is

proceeding with the help of counsel), the Court does not need to, and thus does not, rely in this

Decision and Order on any arguments from Defendants' prior memorandum of law; Defendants

have sufficiently asserted the relevant arguments in their current memorandum of law.

    The Equal Protection Clause "is essentially a direction that all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439

(1985). "[T]he equal protection guarantee . . . extends to individuals who allege no specific class

membership but are nonetheless subjected to invidious discrimination at the hands of

government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

Where a plaintiff is not a member of a constitutionally protected class, "he may bring an equal

protection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of

---

    [13]     *See Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir.
1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon
motion for summary judgment."); *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This
Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6)
motion to dismiss the complaint] is proper with or without notice to the parties.").

one.'" *AYDM Associates, LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016)

(D'Agostino, J.) (citation omitted).  Plaintiff's Amended Complaint contains allegations

indicating that he is not the only person being discriminated against by the voting system: that

"the methodology defined, beginning with Local Law 2 of 1966 and currently in Local Law 12

of 2011, results in *voters in Warren County municipalities other than Queensbury or Glens Falls*

having less opportunity to participate in the electoral and political processes to elect the

representatives of their choice" as well as that the Local Law "creates two classes of voters,

those who are allowed to vote directly and separately for their County representatives and an

underclass who are denied this opportunity."  (Dkt. No. 24, at ¶¶ 21-22 [Pl.'s Am. Compl.]

[emphasis added].)  Plaintiff's Amended Complaint therefore indicates that he is alleging an

equal protection violation under a selective enforcement theory.

　　　Under a selective enforcement theory, a plaintiff must establish that (1) he, "compared

with others similarly situated, was selectively treated," and (2) "the selective treatment was

motivated by an intention to discriminate on the basis of impermissible considerations, . . . to

punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to

injure the person."  *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (citation

omitted).  A plaintiff must identify comparators that "'a reasonably prudent person would think

were roughly equivalent'" to the plaintiff, though the plaintiff does not need to show an "exact

correlation" between them and that similarly situated person.  *AYDM Associates*, 205 F. Supp. 3d

at 265 (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696

[S.D.N.Y. 2011]).

Even assuming that Plaintiff could establish that the voters in Queensbury and Glens Falls were similarly situated comparators that were treated differently, he could not, on the record before the Court, establish that the selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations, to punish voters or inhibit their constitutional rights, or by a malicious or bad-faith intent to injure voters outside of Queensbury and Glens Falls. Plaintiff has offered no evidence to show that the discrepancies in the voting process between Queensbury and Glens Falls and the other towns in Warren County were based on anything other than the proportional representation of the towns and cities as evidenced by the census data, or to show that the ability to vote for a separate Town Supervisors and Board Supervisors in Queensbury and Glens Falls was based on anything other than the fact that those two areas had much larger populations than the other areas in Warren County. Notably, the voting ballots submitted by Plaintiff do little more than show that the various areas in Warren County complied with the prescribed voting process; they do not, in the absence of evidence of an improper motive, substantiate Plaintiff's allegations of an equal protection violation. Of note, Plaintiff's Amended Complaint does not contain any allegation that the Warren County Board of Supervisors acted with an improper motive, nor does he suggest (or provide evidence of) such a motive in his opposition memorandum of law. (Dkt. No. 24 [Pl.'s Am. Compl.]; Dkt. No. 34, Attach. 2, at 3-4, 7-9 [Pl.'s Opp'n Mem. of Law].)

Even if the Court were to construe the Amended Complaint as asserting a class-of-one theory, Plaintiff has not raised a genuine issue of material fact as to that theory. Under a class-of-one theory, a plaintiff must establish that he was "intentionally treated differently from others similarly situated and 'there is no rational basis for the difference in treatment.'" *AYDM*

23

*Associates*, 205 F. Supp. 3d at 265 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 [2000]); *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) ("[T]o succeed on a class-of-one claim, a plaintiff must establish that [i] no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [ii] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.").  A class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons [with] whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  Again, assuming (without deciding) that Plaintiff has identified sufficient similarly situated comparators, the admissible record evidence shows a rational basis for the difference in treatment: the significantly higher population of Queenbury and Glens Falls compared to the other towns in Warren County.  Plaintiff has not offered any evidence to show that this is not a rational basis for the voting structure of Local Law No. 12 of 2011.

Because Plaintiff cannot meet all of the elements necessary to establish an equal protection claim under the Fourteenth Amendment, the Court finds that granting summary judgment to Defendants on this alternative basis is appropriate.

### C.      Whether Plaintiff Should Be Granted Leave to Amend the Amended Complaint

Although Plaintiff did not file a motion to amend,[14] he did request in his opposition memorandum of law that he be granted leave to amend the Amended Complaint if the Court chose to consider or agree with Defendants' arguments.  (Dkt. No. 13, Attach. 3, at 11 [Pl.'s Opp'n Mem. of Law].)[15]  "While Federal Rule of Civil Procedure 15(a)(2) requires district courts to freely grant leave to amend 'when justice so requires,' a district court may nonetheless decline to grant such leave 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  *Grabcheski v. Am. Int'l Grp, Inc.*, 687 F. App'x 84, 87 (2d Cir. 2017) (quoting *TechnoMarine SA*, 758 F.3d at 505); *see also F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (upholding the district court's finding that amendment would be futile in a situation where the plaintiff requested leave to amend in its opposition to the motion to dismiss in the event that the complaint was found to be insufficient because the plaintiff offered no clue how the defects identified could be cured through an amendment); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Our opinion today, of course, leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility . . . .").

---

[14]      The Second Circuit has noted that, "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend." *Porat v. Lincoln Towers Comty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).  Of course, the Court may deny such an informal request without prejudice for failure to submit a proposed amended complaint as required by the Court's Local Rules of Practice.

[15]      Plaintiff lacks the right to amend his operative pleading "as a matter of right" pursuant to Fed. R. Civ. P. 15(a)(1) because (1) he did not file a cross-motion to amend within 21 days of service of Defendants' motion under Fed. R. Civ. P. 12(b), and (2) in any event, his operative pleading was already amended once.  *See* Fed. R. Civ. P. 15(1), (2) ("A party may amend its pleading *once* as a matter of course," but otherwise requires the opposing party's written consent or the court's leave to amend).

In this case, the Court finds undue delay and undue prejudice resulting from Plaintiff's failure to make his desired amendment (whatever that might be) before June 7, 2017, when he filed an Amended Complaint.  More importantly, the Court finds that further amendment of Plaintiff's Amended Complaint would be futile.  As noted above, the Court has found that res judicata applies to Plaintiff's claim and there is no conceivable amendment that would cure that defect.  Additionally, as noted above in the Court's alternative finding, Plaintiff also has failed to show that he can meet all of the elements of his claim.  For all of these reasons, Plaintiff's request to amend the Amended Complaint is denied.

ACCORDINGLY, it is

ORDERED that Defendant's motion for summary judgment (Dkt. No. 32) is GRANTED; and it is further

ORDERED that Plaintiff's Amended Complaint (Dkt. No. 24) is DISMISSED.

Dated: June 6, 2018
       Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

26